UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN MILLER,

    Petitioner,

v.

BLAINE LAFLER,

    Respondent,
_____/

Civil No. 2:10-CV-14955
HONORABLE NANCY G. EDMUNDS
UNITED STATES DISTRICT JUDGE

### OPINION AND ORDER GRANTING IN PART AND DENYING IN PART THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

Brian Miller, ("Petitioner"), confined at the Carson City Correctional Facility in Carson City, Michigan, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges his conviction for first-degree home invasion, M.C.L.A. 750.110a(2); and second-degree criminal sexual conduct, M.C.L.A. 750.520c(1)(c). For the reasons that follow, the petition for writ of habeas corpus is **GRANTED IN PART AND DENIED IN PART**.

### I. Background

Petitioner was convicted of the above offenses following a jury trial in the Genesee County Circuit Court.[1] Petitioner's conviction arose out of an incident that occurred on August 1, 2007, when petitioner broke into the victim's house and sexually assaulted her

---

[1] Due to the brevity of the petition for writ of habeas corpus, this Court is willing to incorporate the arguments raised in petitioner's state appellate court brief that was filed on his behalf on his appeal of right with the Michigan Court of Appeals [See this Court's Dkt. # 10-16] as being part of petitioner's application for writ of habeas corpus. *See e.g. Burns v. Lafler*, 328 F. Supp. 2d 711, 717, n. 2. (E.D. Mich. 2004).

1

by grabbing her breasts.

Following his conviction, petitioner was sentenced to fifty months to twenty years on the first-degree home invasion conviction and received a consecutive sentence of two to fifteen years on the second-degree criminal sexual conduct conviction.

Following his conviction, petitioner moved for resentencing, which was denied by the trial judge on September 29, 2008.

The Michigan Court of Appeals remanded the case to the trial court to settle the record regarding the failure to transcribe portions of the prospective jurors' answers that had been made during voir dire. *People v. Miller*, No. 286771 (Mich. Ct. App. March 6, 2009). On remand, the trial court did not settle the record, but instead denied petitioner's motion for a new trial based on the unavailability of the entire voir dire transcripts.

Petitioner's conviction and sentence were affirmed on appeal. *People v. Miller,* No. 286771 (Mich.Ct.App. February 9, 2010); *lv. den.* 486 Mich. 1048, 783 N.W.2d 373 (2010).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. The trial Court violated appellant's due process rights by empaneling a jury whose members were referred to only by juror numbers.

II. Due process requires a new trial or at least an evidentiary hearing to settle the record where the trial court's video system failed to audibly record most of the responses of prospective jurors to questions during jury selection.

III. Due process requires resentencing where appellant maintained innocence and the trial court based its discretionary consecutive sentences on a finding of "No Remorse" there by punishing appellant's right to trial and refusal to admit guilt.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases: An application for a writ of habeas corpus on behalf of a person in custody

> pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'

on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct.770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### III. Discussion

**A. Claim # 1. The anonymous jury claim.**

Petitioner first contends that his due process rights were violated during voir dire, when the trial judge referred to each of the jurors by their number and not by name, employing what is commonly known as an anonymous jury.

The United States Supreme Court has never held that jurors must be referred to by their name and not by number during the jury selection process. Given the lack of holdings by the Supreme Court on the issue of whether it is permissible to use an anonymous jury, the Michigan Court of Appeals' rejection of petitioner's claim was not an unreasonable application of clearly established federal law. *See Wright v. Van Patten,* 552 U.S. 120, 126 (2008); *Carey v. Musladin,* 549 U.S. 70, 77 ( 2006); *See also Thompson v. Runnells,* 208 Fed. Appx. 571, 572 (9th Cir. 2006)(petitioner not entitled to habeas relief involving his constitutional challenges to the state trial court's use of an anonymous jury, because he failed to show that the California Court of Appeal's decision upholding the use of the anonymous jury was contrary to clearly established United States Supreme Court precedent). Although petitioner cites to the Fifth Circuit case of *United States v. Sanchez,* 74 F. 3d 562 (5th Ciir. 1996) in support of his claim, the AEDPA standard of review found in 28 U.S.C. § 2254 (d)(1) prohibits the use of lower court decisions in determining whether the state court decision is contrary to, or an unreasonable application of, clearly established federal law. *Miller v. Straub,* 299 F. 3d 570, 578-579 (6th Cir. 2002). Petitioner is not entitled to habeas relief on his first claim.

### B. Claim # 2. The incomplete transcript claim.

Petitioner next contends that he is entitled to a new trial because portions of the prospective jurors' answers that were made during voir dire were not transcribed because they were not recorded by the audio or video equipment that was inside of the courtroom. Petitioner's appellate counsel argued on direct appeal that without an accurate transcript of the jury selection process, it was impossible for him to determine whether trial counsel effectively represented petitioner and properly exercised challenges to cause to prevent the seating of any biased jurors.

The Michigan Court of Appeals rejected petitioner's claim:

After reviewing the jury selection transcript, we conclude that defendant has failed to establish that the inability to obtain the prospective jurors' inaudible responses "so impede[s][ ] defendant's right of appeal that a new trial must be ordered."  The record reflects that, at trial, both the prosecutor and defense counsel informed the trial court that they were satisfied with the jury as impaneled after 64 pages of voir dire.  At that point, defense counsel had exercised three peremptory challenges, raised no challenges for cause, and had two peremptory challenges remaining. Further, a review of the jury selection transcript reveals that at least some of the answers from the prospective jurors were audible, and other answers can be inferred based on the trial court's or counsels' questions and comments. Once the parties began exercising their peremptory challenges, almost all of the responses by the replacement jurors were audible regarding whether they would have answered any previous questions differently than the rest of the jury panel, whether they could be fair to both parties, and their education and occupations. Considering the available responses, and the trial court's and parties' questions and comments, it is not entirely impossible to review the jury selection as a whole, and the surviving record is sufficient to allow evaluation of defendant's claims on appeal.  The proceedings simply do not indicate that any irregularity occurred, and defendant has failed to overcome the presumption of regularity by merely speculating that he may have had a claim if a complete transcript was available.  In other words, although defendant argues that trial counsel may have rendered ineffective assistance by failing to challenge for cause a juror who could potentially have been biased, defendant offers no proof in support of this assertion, beyond mere speculation, and does not even proffer a possible basis for a for-cause challenge. He has therefore failed to establish any prejudice.

*Miller*, Slip. Op. at * 2-3 (internal citations and quotations omitted).

Although a state must afford an indigent criminal defendant a record of sufficient completeness to permit proper review of his claims on appeal, a "'record of sufficient completeness' does not translate automatically into a complete verbatim transcript." *Mayer v. City of Chicago,* 404 U.S. 189, 194 (1971). The Sixth Circuit has stated that "federal habeas relief based on a missing transcript will only be granted where the petitioner can show prejudice." *See Scott v. Elo*, 302 F. 3d 598, 604 (6th Cir. 2002)(citing *Bransford v. Brown*, 806 F. 2d 83, 86 (6th Cir. 1986)). Although the Sixth Circuit has recognized the difficulty in demonstrating prejudice where the transcripts are missing or incomplete, a habeas petitioner must nonetheless "present something more than gross speculation that the transcripts were requisite to a fair appeal." *See Bransford,* 806 F. 2d at 86.

In the present case, petitioner has offered nothing other than gross speculation that the unrecorded portions of the jurors' answers during voir dire would have established that any biased jurors had been left on the jury, so as to support any claim that trial counsel was ineffective for failing to challenge these jurors for cause. To maintain a claim that a biased juror prejudiced him, for purposes of maintaining an ineffective assistance of counsel claim, a habeas petitioner must show that the juror was actually biased against him. *See Hughes v. United States,* 258 F. 3d 453, 458 (6th Cir. 2001); *See also Miller v. Francis,* 269 F. 3d 609, 616 (6th Cir. 2001)(when a claim of ineffective assistance of counsel is founded on a claim that counsel failed to strike a biased juror, the defendant must show that the juror was actually biased against him). Petitioner has failed to offer anything other than mere speculation that the unrecorded portions of the jurors' answers to the questions posed to them during voir dire would have established that any jurors

were actually biased against him, so as to support an ineffective assistance of counsel claim. Because petitioner's claim is based on pure speculation, he has failed to show that he was prejudiced by the failure to provide him with a complete transcript of the voir dire proceedings. Petitioner is not entitled to habeas relief on his second claim.

**C. Claim # 3. The sentencing claim.**

In his third and final claim, petitioner alleges that the trial judge violated his Fifth Amendment right against self-incrimination by basing his decision to impose consecutive sentences on the fact that petitioner continued to maintain his innocence at sentencing.

At sentencing, petitioner told the judge he was "not a danger to anybody. This never happened." (Tr. 6/12/2008, p. 13). In response to these remarks, the trial judge stated:

> I have no doubt in my mind you did it, ah, there's no doubt about it, you did this. And that's the unfortunate thing about these kind of cases, about rape cases, is that the--the defendant is never willing to admit what he did. And the family of the defendant is always thinking that the system is just oppressing him and railroading him. And the defendant never admits. So the family goes on suffering the rest of their lives. Your family is going to suffer the rest of their lives because they're going to think that you went to prison when you shouldn't have. And they're going to blame this young lady for the fact that you went to prison. Um, and you're never going to get any help. And you're going to live to do it again. And then the next time you'll go away for the rest of your life. That's the bad part about it. And to be honest with you, if you wanted to do your family a favor, you would turn to them and you would admit to them. You would say, look I absolutely did this. Because they need to know that you did it, so they can get you help. But you're not going to do that. You're gonna to [sic] do like every other defendant I've sent to prison. You're gonna deny it all the way to prison. And then they're going to spend money on appellate lawyers, and all this kind of stuff for you, 'cause they think you got railroaded. And their life is going to be miserable, because you won't tell them the truth.

(*Id.,* pp. 19-20).

The Court and petitioner then engaged in the following exchange:

7

> THE COURT: 'Cause you're gonna go to prison and sit back and say, hey, I didn't do this, you know. Mom and dad, I got railroaded. The Judge railroaded me, the jury railroaded me, the prosecutor railroaded me, the victim railroaded me, they all did me wrong. That's what's gonna happen here. And it's a tragedy because your own family doesn't deserve that from you. They at least deserve, at the minimum, that you tell them the truth. Tell them what you did, so that they can go on with their lives and not think you've been railroaded. But you're not gonna do it. So everyone continues to suffer.
>
> MR. MILLER: Because I didn't do it.
>
> THE COURT: I'm sorry?
>
> MR. MILLER: Because I didn't do it.
>
> THE COURT: That's what I expect you to say.
>
> MR. MILLER: You--you got your own story, she's got her own story, I got my own story.
>
> THE COURT: I–I gottcha.
> (*Id.,* pp. 21-22).

The trial judge proceeded to impose consecutive, as opposed to concurrent sentences for first-degree home invasion and second-degree criminal sexual conduct. (*Id.,* p. 24). [2] In so doing, the judge remarked:

> And I think based on the discussion that I've had here, I'm convinced that you've not learned anything. That you have no remorse for what you've done. And--and because of that, I am going to exercise my discretion to run consecutive instead of concurrent. Because I think that, ah, I need to remove you from society as long as I possibly can. To protect the victim, number one. Ah, but also to hopefully hope that you'll mature, ah, to an extent that when you do get out that you don't repeat this kind of behavior again.
>
> (*Id.,* p. 23).

---

[2] M.C.L.A. 750.110a(8) permits a trial court, in its discretion, to order a term of imprisonment for first-degree home invasion to be served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction.

Petitioner subsequently moved for resentencing on a number of grounds, amongst which was his claim that the trial judge had improperly considered petitioner's maintaining of his innocence in imposing a consecutive sentence. The trial judge denied petitioner's motion for resentencing, claiming that he did not consider petitioner's claim of innocence in sentencing him, but merely "sentenced him for what he did." (Tr. 9/29/2008, pp. 14-16). However, although the trial judge insisted that he had not considered petitioner's refusal to admit guilt in fashioning sentence, he remarked:

> Actually, he's very lucky that I stayed within the guidelines, because, quite frankly, I felt I should have exceeded the guidelines on him, given what he did. I mean, he broke into this lady's house at three o'clock in the morning, with this mask situation going on, trying to rape her in her bed with her son there in the house, okay; and then to, you know, add insult -additional injury, he then comes into Court and pretends that he did nothing wrong and has turned his whole family against this young lady, who lives right down the street from them. So it was just to me a very ugly situation; and I thought your client was not honorable at all. I just thought he was just totally dishonorable about the whole thing; and he should have just been honest about what he did, okay; that was - that's what my concern was.

(*Id.,* p. 15).

The Michigan Court of Appeals rejected petitioner's claim:

Based on the record, we conclude that the trial court did not improperly base its sentencing decisions on defendant's failure to admit guilt. Although defendant maintained his innocence at sentencing, and the trial court commented on it, the trial court did not attempt to get defendant to admit guilt or indicate that if he did so, his sentence would be less severe. Rather, the trial court discussed the fact that defendant's failure to be honest with his sister and family caused the breakup of a longtime friendship between defendant's sister and the victim, caused defendant's family to be mad at the victim, and would ultimately cause his family to suffer because they believed that he was innocent and was therefore being "railroaded" by the court system. At defendant's motion for resentencing, the trial court specifically stated that it did not consider defendant's claims of innocence in determining his sentence, but rather "sentenced him for what he did." It noted that defendant actually deserved a more severe sentence given the facts of the

9

case, and that defendant needed to be removed from society to protect the victim and to give him a chance to mature so he would not re-offend in the future. Many of the trial court's comments regarding defendant's refusal to be honest with his family related to defendant's potential for rehabilitation, i.e., that defendant would not receive the help he needed and would likely re-offend, which was a proper factor for the trial court to consider when fashioning a sentence.

*Miller,* Slip. Op. at * 3-4 (internal citations omitted).

A defendant's Fifth Amendment right against self-incrimination "is fulfilled only when a criminal defendant is guaranteed the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty ... for such silence.'" *Estelle v. Smith,* 451 U.S. 454, 468 (1981)(*quoting Malloy v. Hogan*, 378 U.S. 1, 8 (1964)). In *Mitchell v. United States,* 526 U.S. 314, 328-30 (1999), the United States Supreme Court extended the right against self-incrimination to sentencing and held that the Fifth Amendment right against self-incrimination prevents a sentencing court from drawing negative inferences from a defendant's silence in determining the facts relating to the circumstances and details of the crime.

In *Ketchings v. Jackson,* 365 F. 3d 509 (6th Cir. 2004), the Sixth Circuit affirmed the grant of a writ of habeas corpus by this Court and held that the state trial court's consideration, at sentencing following a jury trial, of the petitioner's refusal to admit to charges which arose out of a drive-by shooting that resulted in the death of a nine-year-old girl violated petitioner's Fifth Amendment right against self-incrimination. *Id.* at 512-13. Although acknowledging that it was permissible for the court to consider the petitioner's lack of remorse in fashioning sentence, the Sixth Circuit concluded from a review of the trial judge's remarks at sentencing that the judge was not merely concerned with the petitioner's lack of remorse in the context of his rehabilitative potential, but also considered

10

his failure to admit guilt in sentencing the petitioner to an above the guidelines sentence. *Id.* In so ruling, the Sixth Circuit quoted with approval this Court's finding that "the [sentencing] judge referred negatively directly and indirectly to [Ketchings's] continued assertion of his belief in his innocence and implied that [Ketchings] would be sentenced more leniently if he accepted the jury's verdict, that is, if he gave up his Fifth Amendment privilege to ... refuse to admit guilt." *Id.* at 513. The Sixth Circuit concluded that the sentencing judge had criticized the defendant's failure to admit guilt and that the Michigan Court of Appeals' finding to the contrary was an unreasonable application of clearly established federal law and an unreasonable determination of the facts in light of the evidence. *Id.* at 514. [3]

Although it is permissible for a judge to consider a defendant's lack of remorse at sentencing, *See e.g. United States v. Kennedy,* 499 F. 3d 547, 552 (6th Cir. 2007), in the present case, the trial judge did not merely comment upon petitioner's lack of remorse, "but referred negatively directly and indirectly to" petitioner's "continued assertion of his belief in his innocence". *Ketchings,* 365 F. 3d at 513. The trial judge commented several times about petitioner's refusal to admit his guilt to the charges. When petitioner stated for the third time that he did not commit the crimes, the trial judge replied. "That's what I expected you to say[.]", which seemed to suggest that the judge viewed negatively petitioner's refusal to admit his guilt. Although the judge would later deny at resentencing that he used petitioner's refusal to admit guilt against him, the judge in denying the motion for resentencing again commented that petitioner had pretended "that he did nothing

---

[3] This Court granted habeas relief to the petitioner in *Ketchings* in *Ketchings v. Jackson,* U.S.D.C. No. 01-73141-DT (E.D. Mich. December 6, 2002)[This Court's Dkt. # 19].

wrong", and that petitioner "should have just been honest about what he did". Thus, in spite of the trial judge's claim to the contrary, the judge appeared to be upset with petitioner's refusal to be honest and admit his guilt to the charges. When reviewing the trial judge's remarks from the original sentencing and the motion to deny the resentencing in their entirety, the judge referred negatively, both directly and indirectly, to petitioner's refusal to admit guilt as an implicit basis for imposing consecutive sentences. It is obvious that the judge's decision to impose consecutive sentences was based on his conclusion that petitioner's rehabilitative potential was not very good, which in turn the judge based on petitioner's refusal to admit that he was guilty of the charges. Moreover, the judge's comments in this case are factually indistinguishable from the remarks that had been made by the judge in *Ketchings* that both this Court and the Sixth Circuit found objectionable. *Ketchings,* 365 F. 3d at 513-14. Petitioner is therefore entitled to habeas relief because the Michigan Court of Appeals' finding that the trial court did not violate petitioner's right against self-incrimination at sentencing was an unreasonable application of clearly established federal law and an unreasonable determination of the facts in light of the evidence. *Id.* at 514. This Court concludes that a writ of habeas corpus should be granted, conditioned upon petitioner being resentenced in the Genesee County Circuit Court by a different judge. *Id.*

### IV. Conclusion

The Court will grant habeas relief to petitioner based upon his third claim involving the trial court's violation of petitioner's Fifth Amendment right against self-incrimination at sentencing. The Court will deny habeas relief to petitioner with respect to his first and second claims.

The Court will also deny a certificate of appealability to petitioner with respect to his first and second claims. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability with respect to his first and second claims because he has failed to make a substantial showing of the denial of a federal constitutional right with respect to these two claims. *Dell v. Straub,* 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002).

### V.  ORDER

Based upon the foregoing, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED IN PART AS TO PETITIONER'S FIRST CLAIM INVOLVING THE USE OF AN ANONYMOUS JURY AND HIS SECOND CLAIM INVOLVING THE FAILURE TO TRANSCRIBE THE JURORS' ANSWERS DURING VOIR DIRE**.

**IT IS FURTHER ORDERED** that the petition for a writ of habeas corpus is **CONDITIONALLY GRANTED IN PART AS TO PETITIONER'S CHALLENGE TO HIS SENTENCE ON THE GROUND THAT HIS SENTENCE WAS IMPOSED IN VIOLATION OF HIS FIFTH AMENDMENT RIGHTS**.

**IT IS FURTHER ORDERED** that petitioner's case be **REMANDED TO THE GENESEE COUNTY CIRCUIT COURT FOR RESENTENCING BY ANOTHER JUDGE**. The State of Michigan must resentence petitioner within one-hundred and eighty (180) days, or this Court shall consider issuing an order granting additional relief. Should the State appeal this decision to the United States Court of Appeals for the Sixth Circuit, this order is stayed pending the disposition of that appeal.

**IT IS FURTHER ORDERED** That a certificate of appealability is **DENIED** with respect to petitioner's first and second claims**.**

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: September 13, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 13, 2011, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager